48 F.3d 131
 UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff-Appellant,
v.
A & S MANUFACTURING COMPANY, INCORPORATED; Federal
Insurance Company; Hartford Accident and
Indemnity Company; Fireman's Fund
Insurance Company, Defendants-Appellees.
 No. 94-1002.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 10, 1994.
Decided Feb. 28, 1995.
 
 ARGUED: Thomas W. Brunner, Wiley, Rein & Fielding, Washington, DC, for appellant. Lewis Anthony Sutin, Hogan & Hartson, L.L.P., Washington, DC, John Henry Zink, III, Venable, Baetjer & Howard, Towson, MD, for appellees. ON BRIEF: John E. Barry, Mitchell R. Kreindler, Wiley, Rein & Fielding, Washington, DC, for appellant. William J. Bowman, James P. Ruggeri, Hogan & Hartson, L.L.P., Washington, DC, for appellee Hartford; K. Thomas Shahriari, Mitchell A. Stearn, Gilberg & Kurent, Washington, DC, for appellee Federal; Keith M. Bonner, Brault, Graham, Scott & Brault, Rockville, MD, for appellee Fireman's Fund; Patricia A. Malone, Venable, Baetjer & Howard, Towson, MD, for appellee A & S Mfg.
 Before RUSSELL and MICHAEL, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 Affirmed by published opinion. Senior Judge BUTZNER wrote the opinion, in which Judge RUSSELL and Judge MICHAEL joined.
 OPINION
 BUTZNER, Senior Circuit Judge:
 
 
 1
 United States Fidelity and Guaranty Company (USF & G) appeals the district court's order realigning the parties and dismissing this action for lack of diversity. USF & G contends that the court applied the incorrect standard in deciding whether realignment of the parties was appropriate. In the alternative, USF & G argues that even if the court used the correct standard, the court improperly applied it. Affirming, we conclude that the district court properly selected and applied the "principal purpose" test, which is derived from Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941).
 
 
 2
 * From 1972 to 1989, A & S Manufacturing Co. separately contracted with USF & G, Federal Insurance Company, and Hartford Accident and Indemnity Company for primary liability insurance. Environmental contamination allegedly occurred at A & S sites covered by these contracts. The Environmental Protection Agency has sued A & S to recover costs for responding to the contamination. A & S called upon the three insurers for defense and indemnity.
 
 
 3
 USF & G filed this action against A & S, Federal, and Hartford. USF & G sought a declaration of the parties' rights and duties as they relate to A & S's claims for insurance coverage for environmental liabilities. Each insurer denies liability to A & S. Each also contends that if it were liable, one or both of the other insurers would be liable to it for reimbursement under various theories. As aligned in USF & G's complaint, complete diversity existed and the district court had jurisdiction pursuant to 28 U.S.C. Sec. 1332.
 
 
 4
 One month later, A & S filed a virtually identical declaratory judgment action against USF & G, Federal, Hartford, and others in a New Jersey state court. A & S then moved to realign the parties in this federal action.
 
 
 5
 The district court applied the "principal purpose" standard and aligned the three insurers as plaintiffs and A & S as the sole defendant. Both A & S and Federal have their principal place of business in New Jersey. This identity of citizenship after realignment destroyed complete diversity, and the district court dismissed the action for lack of jurisdiction. United States Fidelity and Guar. Co. v. A & S Mfg. Co., 839 F.Supp. 347 (D.Md.1993).
 
 II
 
 6
 The circuits are currently divided over the appropriate standard for deciding whether to realign. The district court applied the principal purpose test which has been adopted in the Third, Sixth, and Ninth circuits. See United States Fidelity and Guar. Co. v. Thomas Solvent Co., 955 F.2d 1085, 1088-91 (6th Cir.1992); Employers Ins. of Wausau v. Crown Cork & Seal Co., 942 F.2d 862, 864-67 (3d Cir.1991); Continental Airlines, Inc. v. Goodyear Tire & Rubber Co., 819 F.2d 1519, 1523 n. 2 (9th Cir.1987).
 
 
 7
 USF & G urges this court to join the Second and Seventh Circuits in adopting the substantial controversy test. See Maryland Casualty Co. v. W.R. Grace and Co., 23 F.3d 617, 621-24 (2d Cir.1994); American Motorists Ins. Co. v. Trane Co., 657 F.2d 146, 149-51 (7th Cir.1981). USF & G contends that the Supreme Court, the majority of the circuits, and this court have consistently applied a substantial controversy test in realignment cases. They also maintain that the principal purpose test cannot be reconciled with the language of either Article III or the diversity statute.
 
 
 8
 Both standards are derived from Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941). Indianapolis outlines certain principles that govern realignment:
 
 
 9
 To sustain diversity jurisdiction there must exist an actual, substantial controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to look beyond the pleadings and arrange the parties according to their sides in the dispute. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary collision of interests exists, is therefore not to be determined by mechanical rules. It must be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute.
 
 
 10
 314 U.S. at 69, 62 S.Ct. at 17 (citations and internal quotation marks omitted).
 
 
 11
 The substantial controversy test asks whether any actual and substantial conflict exists between the opposing parties. If a substantial conflict separates the opposing parties, regardless of whether the conflict is the principal dispute in the case, the court will not realign the parties. See Maryland Casualty Co., 23 F.3d at 622-23. This approach emphasizes the first sentence of Indianapolis 's governing principles, but it cannot be reconciled with the remainder of that opinion. Indianapolis specifically requires the district court to ascertain the "collision of interests" from the "principal purpose of the suit, and the primary and controlling matter in dispute" and to "arrange the parties according to their sides in the dispute." 314 U.S. at 69, 62 S.Ct. at 17 (citations and internal quotation marks omitted). The requirement that a district court ascertain the "principal purpose of the suit and the primary and controlling matter in dispute" cannot be disregarded as mere surplusage.
 
 
 12
 Although the Court in Indianapolis considered additional controversies raised by the parties opposed to realignment, 314 U.S. at 73 n. 3, 62 S.Ct. at 18 n. 3, this does not validate a substantial controversy approach. The Court's examination of other controversies was simply to identify the principal purpose of the suit. The Court was confirming that the other controversies were not primary in the dispute.
 
 
 13
 The substantial controversy test allows parties to easily manipulate diversity jurisdiction. In many multiple party suits, some hypothetical adversity between diverse parties can be claimed as giving rise to a substantial controversy. Thus, the substantial controversy test allows diversity jurisdiction in a broad range of cases, limited only by the creative pleading of the plaintiff. The principal purpose standard, in contrast, allows parties to engage a federal forum in a narrower range of situations. This result comports with the mandate that courts carefully confine their diversity jurisdiction to the precise limits that the jurisdictional statute, pursuant to Article III, has defined. See Crown Cork & Seal Co., 942 F.2d at 867.
 
 
 14
 We reject USF & G's contention that the Fourth Circuit has already adopted the substantial controversy test. In addition to Fourth Circuit cases that are no longer controlling because they were decided prior to Indianapolis, USF & G cites three cases to support its argument. These cases do not support USF & G's position. In American Ins. Co. v. Lester, 214 F.2d 578, 581 (4th Cir.1954), we took issue with the district court's determination of the primary dispute in the case, not with its use of the principal purpose approach. USF & G also relies on C.Y. Thomason Co. v. Lumbermens Mut. Casualty Co., 183 F.2d 729, 733 (4th Cir.1950), and J.B. Hunt Transp., Inc. v. Innis, No. 92-1273, 1993 WL 13376, 1993 U.S.App. LEXIS 1315 (4th Cir. Jan. 26, 1993) (unpublished). These can be read as supporting the use of either standard. They do not clearly show that we have adopted or even favored one test over the other.
 
 III
 
 15
 Application of the principal purpose test entails two steps. First, the court must determine the primary issue in the controversy. Next, the court should align the parties according to their positions with respect to the primary issue. If the alignment differs from that in the complaint, the court must determine whether complete diversity continues to exist.
 
 
 16
 USF & G asserts that the district court improperly applied the principal purpose test. USF & G claims that the court must look at USF & G's principal purpose for bringing the suit and then determine if the parties are properly aligned with respect to that purpose. It maintains that its principal purpose in bringing the suit was to resolve its obligations and rights with respect to A & S, Federal, and Hartford. It protests that the principal purpose test allows a district court to make arbitrary realignment decisions.
 
 
 17
 Antagonism between parties should be resolved by the pleadings and the nature of the controversy. Smith v. Sperling, 354 U.S. 91, 97, 77 S.Ct. 1112, 1116, 1 L.Ed.2d 1205 (1957). The pleadings and the nature of the suit clearly manifest the proper alignment of the dispute. The district court found that the primary issue in the case was whether the insurers owe A & S a duty to defend against the underlying environmental lawsuits and a duty to indemnify for any liability assessed against A & S. The court found that any disputes existing among the insurers regarding contribution are ancillary to the primary issue of the duty to indemnify. It arranged the parties around this primary dispute, placing the insurers as plaintiffs and the insured as the defendant.
 
 
 18
 Practicalities undergird the district court's reasoning. A court trying the merits of this controversy would first have to decide whether the insurers were under any obligation to defend and indemnify A & S. If none, or only one, provided coverage, the question of the insurers' liability to each other would be moot. Only if two or more were liable to A & S, would the court have to allocate liability and costs.
 
 
 19
 The district court's findings and conclusions with respect to realignment were proper. The dispute among the insurers is secondary to whether the insurers are liable to A & S and is hypothetical until the insurers' liability is determined. The potentially substantial, though not principal, controversies that USF & G raises are subsumed in the primary issue of the insurers' liability to A & S. The insurers share the primary goal of avoiding obligations to A & S, and the district court properly realigned them as plaintiffs opposite the defendant A & S. The Sixth and Third Circuits have come to similar conclusions under comparable facts. See United States Fidelity & Guar. Co. v. Thomas Solvent Co., 955 F.2d 1085, 1088-91 (6th Cir.1992); Employers Ins. of Wausau v. Crown Cork and Seal Co., 942 F.2d 862, 864-67 (3d Cir.1991). But see Maryland Casualty Co. v. W.R. Grace and Co., 23 F.3d 617, 621-24 (2d Cir.1994); American Motorists Ins. Co. v. Trane Co., 657 F.2d 146, 149-51 (7th Cir.1981).
 
 
 20
 The dismissal for lack of diversity jurisdiction is affirmed.
 
 
 21
 AFFIRMED.