LENNOX INDUSTRIES, INC., Plaintiff,

v.

Rodrigo CAICEDO YUSTI, and Caicedo Distributors, Inc., Defendants.

Civ. No. 93–2613 (DRD).

United States District Court, D. Puerto Rico.

March 31, 1997.

Roberto Lopez–Garcia, San Juan, PR, for plaintiff Lennox Industries, Inc.

Roberto Santana–Aparicio, Del Toro & Santana, Hato Rey, PR, for intervenor–plaintiff Banco Santander P.R.

Alberto Sepulveda–Giron, Santurce, PR, for defendant Rodrigo Caicedo–Yusti.

Miguel A. Cuadros–Pesquera, Cuadros & Cuadros, Old San Juan, PR, for defendant Caicedo Distributors, Inc.

## *JUDGMENT*

DOMINGUEZ, District Judge.

For the reasons set forth in the Opinion and Order issued on this same date, the Court enters judgment for plaintiff Lennox Industries, Inc., against co-defendant Caicedo Distributors, Inc., in the amount of $950,000.00, interest thereon accrued at a 7% annual rate from July 24, 1992, until full payment is made, and $95,000.00 in costs and attorneys' fees. Judgment is also entered for plaintiff against co-defendant Rodrigo Caicedo–Yusti for the sum of all of the amounts stated above, since Mr. Caicedo personally guaranteed the obligations of Caicedo Distributors, Inc.

The Court orders the public sale of the property described in Deed No. 28, in guarantee of the mortgage note described in said deed, dated July 24, 1992, before Notary Public Roberto López García, to satisfy the payment of the note. The property is described in Deed No. 28 at paragraph 11, subparagraph A.

The Court also orders the sale at public auction of three out of the four properties described in Deed No. 29, also dated July 24, 1992, before Notary Public Roberto López García. The Court specifically orders the sale of the properties described in Deed No. 29 at paragraph 11, subparagraphs A through C.

However, the Court excludes from such sale the property heretofore described as the "Cerro Gordo property" and described in Deed No. 29 at paragraph 11, subparagraph D. On motion of an interested party, the Court will order the sale at public auction of such property after May 1, 1997, if Banco

Santander does not file a declaratory judgment action on or before May 1, 1997, or otherwise upon the resolution of such declaratory judgment action, whichever is later.

IT IS SO ADJUDGED AND DECREED.

## *OPINION AND ORDER*

Plaintiff Lennox Industries, Inc. ("Lennox")[1] filed this diversity suit seeking to foreclose the mortgage it holds on certain properties owned by defendants Rodrigo Caicedo Yusti ("Caicedo") and Caicedo Distributors, Inc. ("CDI").[2] Pending before the Court are three related motions: Lennox's motion for judgment on the pleadings against Caicedo and CDI (Docket No. 11), Intervenor Banco Santander's motion to intervene (Docket No. 12), and Lennox's motion to dismiss Santander's complaint (Docket No. 14). For the reasons discussed below, the Court denies Santander's motion to intervene and grants Lennox's motion for judgment on the pleadings. However, the Court will also stay the execution of the judgment pending a final resolution of the mortgage priority dispute between Lennox and Banco Santander.

## I. Uncontroverted Facts.

CDI distributed Lennox products in Puerto Rico for a number of years. By the middle of 1992, however, CDI had incurred substantial debts with Lennox for merchandise received but not paid for. Specifically, CDI owed Lennox $388,962.01,[3] and in addition had an outstanding balance of $523,086.73, which was soon to become due and payable. Therefore, on July 24, 1992, "in order to secure the indebtedness previously mentioned, and any other amounts of principal and interest that will become due and payable in the future," Mr. Caicedo and CDI entered into a pledge agreement with Lennox. Pursuant to this agreement, Mr. Caicedo gave his personal guaranty to repay "all debts that CDI [then had] or may have in the

---

1. Lennox Industries, Inc., is a corporation organized under the laws of Iowa, and having its principal place of business in Dallas, Texas.

2. Mr. Caicedo is the owner and president of co-defendant Caicedo Distributors, Inc., a corporation organized under the laws of, and having its

principal place of business in, the Commonwealth of Puerto Rico.

3. This amount was increasing at a seven percent annual rate of interest.

future, including principal and interest, jointly and severally with CDI." Mr. Caicedo also executed a mortgage note in favor of Lennox, in the amount of $150,000 at a seven percent annual rate of interest, which was guaranteed by a mortgage upon his personal residence (hereinafter, "the Deed No. 28 mortgage").[4] In addition, CDI executed another mortgage note in favor of Lennox, in the amount of $800,000 at a seven percent annual rate of interest, which was guaranteed by mortgages upon four separate properties owned by CDI (hereinafter, "the Deed No. 29 mortgage").[5]

Soon thereafter, Mr. Caicedo and CDI defaulted on their debt obligations to Lennox. Relying on its rights under the mortgage notes, Lennox then filed the instant foreclosure action. However, when both Mr. Caicedo and Caicedo Distributors filed for Chapter 11 protection in 1995, the action was automatically stayed. Approximately a year later, the bankruptcy court approved the trustee's reorganization plan and dismissed the bankruptcy case. Five months later, the plaintiff notified the Court of the dismissal of the bankruptcy cases, and indicated that it desired to continue pursuing its remedies in the instant case. On December 5, 1995, the Court lifted the stay, ordered that proceedings be resumed in this action, and granted Lennox sixty days to file dispositive motions. For various reasons, however, Lennox was delayed until May 11, 1996, when it finally filed a motion for judgment on the pleadings.

Twenty-two days later, R.F. Mortgage and Investment Corp. filed a motion to intervene and an intervenor's complaint, in which it claimed an interest prior to Lennox's in one of the four properties owned by CDI that are subject to the Deed No. 29 mortgage. The property in question is a two-story home located on an ocean-front plot of land in the Cerro Gordo neighborhood in Vega Alta, Puerto Rico.[6] The Intervenor informs the Court that it has obtained a judgment of foreclosure against the Cerro Gordo property in a suit brought in the courts of the Commonwealth of Puerto Rico, but that the judgment has not been executed because of the pendency of the proceedings in this case.

On August 12, 1988, CDI had purchased this property from an unidentified party.[7] At that time, the Cerro Gordo property was encumbered with a $99,500 mortgage in favor of Doral Mortgage Corp. (hereinafter, "the Doral mortgage").[8] On the same day that CDI acquired the Cerro Gordo property, the Doral mortgage debt was paid in full with part of the proceeds from a loan for $119,250 that CDI obtained from R.F. Mortgage and Investment Corp. The loan from R.F. Mortgage was to be guaranteed with a mortgage on the Cerro Gordo Property (hereinafter, "the R.F. mortgage").[9] The original Doral

---

4. The mortgage note guaranteed by the Caicedo mortgage was executed on July 24, 1992, in San Juan, Puerto Rico, before Notary Public Roberto López García, at Affidavit No. 1858. The mortgage deed was executed on the same date, in the same place, and before the same notary, at Deed No. 28.

5. The mortgage note guaranteed by the CDI mortgage was also executed on July 24, 1992, in San Juan, Puerto Rico, before Notary Public Roberto López García, but at Affidavit No. 1857, and at Deed No. 29. In accordance with Article 170 of the Puerto Rico Mortgage Law of 1979, P.R. Laws Ann. tit. 30, § 2566 (Official translation 1993), which provides that "[w]hen several properties are mortgaged at the same time by a single loan, the amount or part of the lien which each must be liable for shall be specified," the Deed specified that each of the four properties guaranteed $200,000, or exactly one quarter of the total debt guaranteed by the mortgage note.

6. The property is recorded at page 114 of volume 26 of Vega Alta, Registry of Property of Bayamón, Third Section, property No. 1131, first entry.

7. The Cerro Gordo property was acquired by means of Deed No. 544, executed in San Juan before Notary Public Esteban García Malatrasi.

8. The previous owner of the Cerro Gordo property had entered into a mortgage contract with Doral Mortgage Corp. The mortgage agreement, for the principal sum of $95,500 due on March 1, 1995, and with annual interest set at 9 and 3/8 percent, was notarized by means of Deed No. 96, executed in San Juan on February 21, 1987. The mortgage was recorded at page 120 of book 26 of Vega Alta, Registry of Property, Third Section, property No. 1131, eighth inscription.

9. The mortgage note in favor of R.F. Mortgage and Investment Corp., for the principal sum of $119,250 payable on September 1, 2018, and with annual interest set at 10 and 3/4 percent,

mortgage was to have been canceled immediately and then to have been substituted by the R.F. mortgage as a first mortgage on the property. However, for reasons allegedly unknown to the parties, the parties failed to cancel the Doral mortgage or to present for recordation the R.F. mortgage until approximately four years later.[10] The records in the Registry of Property therefore remained inaccurate insofar as they reflected the existence of a mortgage whose principal obligation had been extinguished, and failed to reflect the existence of the new, superseding obligation.

On July 15, 1992, a Deed of Cancellation to cancel the Doral mortgage was finally executed before a notary public. Nine days later, on July 24, 1992, CDI executed the Deed No. 29 mortgage, which, as discussed above, covered four properties, including the Cerro Gordo property. The Deed No. 29 mortgage provides that the Doral mortgage was the first mortgage on the Cerro Gordo property because on July 24, 1992, the Doral mortgage on the Cerro Gordo property had not yet been canceled.

Just over a week afterwards, on August 3, 1992, and before the Lennox mortgage was presented for recordation, someone presented for recordation at the Registry of Property a Deed of Cancellation for the Doral mortgage. A week after that, on August 10, 1992, the Deed No. 29 mortgage was presented for recordation at the Registry of Property. Because the Doral mortgage had been canceled, the Deed No. 29 mortgage was recorded as a first mortgage on the Cerro Gordo property.[11] Therefore, when the R.F. mortgage on the Cerro Gordo property was finally presented for recordation at the Registry of Property on February 4, 1993, it was recorded as a second mortgage instead of as a first mortgage.

## II. Motion to Intervene and Motion to Dismiss Intervenor's Complaint

R.F. Mortgage and Investment Corp. filed a motion to intervene, claiming "an interest relating to the property which is the subject of the above captioned action, and the applicant is so situated that the disposition of this action may, as a practical matter, impair or impeded the applicant's ability to protect that interest." Docket No. 12. R.F. Mortgage pointed out that its interests are not adequately represented by the existing parties to the litigation, because as a "holder in due course of a mortgage note executed prior to the execution of the mortgage note object of this foreclosure action" but inscribed as a junior lien, its note "stands to be canceled upon the execution of the judicial sale that will ensue upon foreclosure of the mortgage note held by the plaintiff," Lennox Industries. The R.F. mortgage note and deed were thereafter transferred to Banco Santander de Puerto Rico. Banco Santander, as the current holder of the note, has been authorized to substitute R.F. Mortgage as intervenor. The Court will therefore refer to Banco Santander as the intervenor. Lennox has opposed Banco Santander's intervention, arguing both that intervention would defeat complete diversity in this case, and that the intervenor's complaint fails to state a cause of action upon which relief could be granted.

### A. Intervention: Fed.R.Civ.P. 24

Although Lennox correctly notes that the motion to intervene "fails to identify under which section of [Fed.R.Civ.P.] 24 it relies" on, the omission matters little, given that the supplemental jurisdiction statute does not distinguish between intervention as of right and permissive intervention. *See* 28 U.S.C. § 1367(b) (discussed below); *Liberty Mutual Group v. Hillman's Sheet Metal and Certified Welding, Inc.*, 168 F.R.D. 90, 92 (D.Me. 1996) ("[t]he plain language of § 1367(b)

was guaranteed by Deed of Mortgage No. 545, also executed in San Juan before Notary Public Esteban García Malatrasi.

10. The Court notes that although notaries are not normally required by law to present mortgage deeds and related documents to the Registry of Property, they do have an ethical obligation to inform their clients of the need to promptly pres-

ent for recordation in the Registry any deeds of mortgage, and of the consequences that may follow from any delays. *See Rosas v. Acosta,* —— P.R. Dec. ——, 93 J.T.S. 154 (1993).

11. The Deed No. 29 mortgage was ranked differently for each of the properties that it covered because they were each already subject to different encumbrances and mortgages.

makes no distinction between intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b).") In any case, the Court notes that Lennox incorrectly concludes that the intervenor is relying on Rule 24(b). To the contrary, one may easily discern that the motion to intervene is premised on Rule 24(a) from the fact that the language used in the first paragraph of such motion is a direct quotation of Rule 24(a).

■ Moreover, Banco Santander's motion clearly satisfies the requirements of Rule 24(a). *See generally Conservation Law Foundation of New England, Inc. v. Mosbacher,* 966 F.2d 39, 41 (1st Cir.1992) (overview of intervention as of right under Fed. R.Civ.P. 24(a)); *see also Banco Popular de Puerto Rico v. Greenblatt,* 964 F.2d 1227, 1231 (1st Cir.1992); *Caterino v. Barry,* 922 F.2d 37, 39–40 (1st Cir.1990); *Travelers Indem. Co. v. Dingwell,* 884 F.2d 629, 637 (1st Cir.1989); *Moosehead Sanitary Dist. v. S.G. Phillips Corp.,* 610 F.2d 49 (1st Cir.1979).

First, Banco Santander has "an interest relating to the property or transaction which is the subject of the action" insofar as it is the holder in due course of the R.F. mortgage on the Cerro Gordo property. The First Circuit has "emphasized that '[t]here is no precise and authoritative definition of the interest required to sustain a right to intervene,' while reiterating 'that the intervenor's claims must bear a 'sufficiently close relationship' to the dispute between the original litigants' and that '[t]he interest must be direct, not contingent.'" *Conservation Law Foundation of New England, Inc.,* 966 F.2d at 42 (quoting from *Travelers Indem. Co.,* 884 F.2d at 638). As indicated above, the Cerro Gordo property is one of the properties targeted by Lennox's foreclosure action. Given that the property could be sold at public auction, Banco Santander's interest cannot be labeled contingent or speculative.

■ Second, Banco Santander is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest." Banco Santander now holds a second mortgage on the Cerro Gordo property but claims that its mortgage should have been ranked first. If Banco Santander is not allowed to intervene,

and the Court instead enters judgment for Lennox and orders that the Cerro Gordo property be sold at public auction, Banco Santander will be barred from later disputing the priority of the Lennox mortgage. As a practical matter, it is quite possible that the price obtained for the sale of the property will not suffice to satisfy the debts owed to both Lennox Industries and Banco Santander. In other words, a decision that Lennox does hold a first mortgage may as a practical matter render worthless the Banco Santander mortgage.

In contrast, permitting Banco Santander to intervene might lead to an entirely different result. For example, if the Court were to rule that Banco Santander holds a first mortgage on the Cerro Gordo property, then Lennox's foreclosure action would not even constitute a nuisance. As noted above, Banco Santander has already obtained a judgment in its foreclosure action in state court against the Cerro Gordo property.

The Court further notes that Banco Santander's claim that its mortgage should be ranked first is not frivolous. It is clear that the R.F. mortgage note existed well before the Deed No. 29 mortgage note was executed. That the Deed No. 29 mortgage was recorded as a first mortgage is the result of what was apparently a fortuitous coincidence for Lennox—the cancellation of the Doral mortgage just a week before the Deed No. 29 mortgage was presented for recordation. Admittedly, Lennox is entitled to benefit from the accidental promotion in priority of its mortgage, but only so long as it qualifies as a good-faith third party under Article 105 of the P.R. Mortgage Law, which provides in pertinent part:

> Despite the fact that registration does not validate transactions or contracts that are null according to the law, nor does it alter the legal relationship of those intervening as parties in such transactions or contracts, a third person who, in good faith and by paying a price, validly acquires a right from a person who according to the Registry, appears with the power to convey it, shall be sustained in his acquisition after he has recorded his right, when for

any reason the Registry is found to be inaccurate, ... because there are actions or titles of ownership or of other real rights that are not duly recorded.... The good faith of a third party shall always be presumed unless there is proof that the inaccuracy of the Registry was known when the property was acquired.

P.R. Laws Ann. tit. 30, § 2355 (Official translation 1993). *See generally Banco de Santander v. Rosario–Cirino,* 126 P.R. Dec. 591, 605–07 (1990) (Negrón–García, J.) (enumerating and discussing requirements).

Lennox is presumed to be a good-faith third party. Banco Santander argues, however, that there are facts which rebut such a presumption. In particular, Banco Santander alleges that Lennox had actual knowledge that the R.F. mortgage existed and was still valid, albeit not recorded. If such allegations were to be proven true, the result would be to strip Lennox of the protections of Article 105, and thus to permit Banco Santander's mortgage to be recorded as a first mortgage.[12]

█ Third, Banco Santander's interests are not and can not be adequately represented by Lennox. Judgment for Lennox would imply a finding that Lennox holds a first mortgage and that Banco Santander holds a second mortgage on the Cerro Gordo property. Judgment for Banco Santander would require an opposite finding. One excludes the other. In addition, the size of the pie (here, the sale value of the Cerro Gordo property) is fixed, and more for Lennox will likely mean less for Banco Santander.

### B. Supplemental Jurisdiction: 28 U.S.C.A. § 1367

Normally, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental juris-diction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C.A. § 1367(a) (1993) (emphasis added). Here, the Court has original jurisdiction over the complaint because the suit is between citizens of different states. 28 U.S.C.A. § 1332(a)(1) (1993). The Court would therefore able to exercise jurisdiction over most supplemental claims and parties that might be raised or joined or might seek to intervene in this case.

However, "the district courts shall not have supplemental jurisdiction ... over claims by persons ... seeking to intervene as plaintiffs under Rule 24 ... when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C.A. § 1367(b) (1993). There has been some debate as to the proper interpretation of section 1367(b)'s final phrase, "when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." Some commentators have suggested that the phrase might be interpreted as "prohibiting supplemental jurisdiction only when the intervention is filed in an attempt to evade jurisdictional requirements." Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute—A Constitutional and Statutory Analysis,* 24 Ariz. St. L.J. 849, 969 (1992). However, although the First Circuit has not yet ruled on this issue, the consensus reached by both commentators and other courts is that the statute's language requires a more restrictive interpretation; namely, that supplemental jurisdiction is entirely precluded over claims by parties intervening in (or joined to)

---

12. Once the presumption of good faith is rebutted, any inaccuracies in the Registry may be corrected by a process summarized by a fellow judge in this district as follows: "[t]he mortgage law recognizes the fact that an inscription or recording may not reflect the real status of the property; therefore, in its article 110, P.R Laws Ann. tit. 30, § 2360, a process of rectification of inaccuracies is reserved for the benefit of 'the holder of title of dominion or real right which is not recorded, which is recorded erroneously, or which is impaired by the inaccurate entry.' Article 151 of the law, P.R. Laws Ann. tit. 30, § 2502, provides that when a required correction affects a third party's rights, the same can be accomplished if (a) the third party consents, or (b) a judicial order is entered to that effect." *Juarbe Alicea v. Juarbe Auto Sales, Inc.,* 640 F.Supp. 110, 112 (D.P.R.1986).

the action as plaintiffs. *See Liberty Mutual Group*, 168 F.R.D. at 92–93 (listing cases); *see also* Richard D. Freer, *Compounding Confusion and Hampering Diversity: Life After Finley and the Supplemental Jurisdiction Statute*, 40 Emory L.J. 445, 476 (1991).

█ Banco Santander, like the defendants in this case, is a citizen of Puerto Rico. Therefore, the Court cannot exercise supplemental jurisdiction over Banco Santander's claims if it intervenes as a plaintiff because doing so would be inconsistent with the requirement of complete diversity imposed by section 1332. In other words, the Court may exercise jurisdiction over Banco Santander's claims only if it is allowed to intervene as a defendant.

## C. Alignment of Parties

Should Banco Santander be aligned as a plaintiff or as a defendant in the pending foreclosure action between Lennox and Caicedo? Lennox argues that Banco Santander should be aligned as an intervening plaintiff because Banco Santander is the defendants' creditor and, as such, may very well be interested in seeking the foreclosure of the Cerro Gordo property. Banco Santander, however, contends that it should be aligned on the side opposite to Lennox because it is only seeking declaratory relief against Lennox.

"Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determinations of who are plaintiffs and who are defendants." *City of Indianapolis v. Chase Nat. Bank*, 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941). The matter of alignment in this case is a close one, but it remains the Court's duty:

> [T]o look beyond the pleadings, and arrange the parties according to their sides in the dispute.... Litigation is the pur-

suit of practical ends, not a game of chess. Whether the necessary collision of interest ... exists, is therefore not to be determined by mechanical rules. It must be ascertained from the principal purpose of the suit ... and the primary and controlling matter in dispute.

*Id.* (citations omitted). The Supreme Court has explained that courts are "to determine the issue of antagonism on the face of the pleading and by the nature of the controversy." *Smith v. Sperling*, 354 U.S. 91, 96, 77 S.Ct. 1112, 1115, 1 L.Ed.2d 1205 (1957). The standard set forth in *City of Indianapolis* is still good law, and has been consistently followed by the Circuit Courts of Appeal. *See United States Fidelity & Guaranty Co. v. A & S Manufacturing Co., Inc.*, 48 F.3d 131, 132–33 (4th Cir.1995); *Maryland Casualty Co. v. W.R. Grace and Co.*, 23 F.3d 617, 621–24 (2d Cir.1994); *United States Fidelity and Guaranty Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir.1992); *Employers Insurance of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45–46 (3d Cir.1990); *U.S.I. Properties Corp. v. M.D. Constr. Co.*, 860 F.2d 1, 4 (1st Cir.1988); *Zurn Industries, Inc. v. Acton Construction Co.*, 847 F.2d 234, 236 (5th Cir.1988) ("The Fifth Circuit has consistently followed the principles of *City of Indianapolis*."); *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir.1987); *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 151 (7th Cir.1981); *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1387 (10th Cir. 1978); *Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866, 870–71 (8th Cir.1966). Although there is some debate among the Circuit Courts of Appeal as to the proper method of interpreting and applying the *City of Indianapolis* test,[13] this Court is bound by

---

13. The Third, Fourth, Sixth, and Ninth Circuits have applied what they have termed the "principal purpose" test, pursuant to which the Courts will realign parties according to their stance with respect to the primary issue in the controversy. *United States Fidelity and Guaranty Co.*, 48 F.3d at 133. The Second, Seventh, and Eighth Circuits, on the other hand, have adopted the "collision of interests" test, also known as the "substantial controversy" test, which "require[s] the existence of an actual, substantial controversy, or a collision of interests, ... but the conflict may in

some cases concern an issue other than the so-called primary issue in dispute." *Maryland Casualty Co.*, 23 F.3d at 622. Both opposing camps have claimed the Fifth Circuit as one of their own. *Compare United States Fidelity and Guaranty Co.*, 955 F.2d at 1089 ("[W]e agree with the Third, Fifth, and Ninth Circuits that Indianapolis Gas requires that parties be aligned in accordance with the primary dispute in controversy, even where a different, legitimate dispute between the parties supports the original alignment."), *with Maryland Casualty Co.*, 23 F.3d at

the First Circuit's statement that "[o]ur task is to determine the primary and controlling matter in dispute,' ..., and then determine whether any actual collision in interests remains. In other words, are USI and MD 'partners in litigation'?" *U.S.I. Properties Corp.*, 860 F.2d at 4 (quoting from *City of Indianapolis*, 314 U.S. at 72, 74, 62 S.Ct. at 18, 19).

■ There is no straightforward way to apply these principles to the case at hand. On the one hand, Banco Santander is the defendant's mortgage creditor, and, indeed, has already obtained a judgment against Caicedo in the Commonwealth's courts for the foreclosure of the mortgage, "but is precluded from forcing a judicial sale inasmuch as, as thing [sic] stand, it would have to assume the claimant of Lennox's mortgage." Intervenor's Opposition to Motion to Dismiss, Docket No. 18, at p. 7. On the other hand, Banco Santander's complaint in intervention in this case states a cause of action only against plaintiff Lennox Industries, for a judgment declaring which mortgage will be given first priority.

There are two disputes before the Court. One is the foreclosure action between Lennox and Caicedo. The other is the declaratory judgment action between Banco Santander and Lennox. There is a third dispute, however, that although not before the Court, may nevertheless tip the scales; namely, the foreclosure action in state court between Banco Santander and Caicedo.

The Court considers the "primary and controlling matter in dispute" in the instant case to be the foreclosure of the mortgage on Caicedo's property. First, the question whether a dispute is primary or secondary depends not on its complexity, but rather on its logical primacy. In this sense, the dispute as to priority is logically secondary to,

because dependent on, the dispute as to the debt itself.

Second, Lennox and Banco Santander have parallel interests insofar as both the instant case as well as the state court litigation were filed in order to obtain a judgment against Caicedo's property. Banco Santander certainly cannot be considered Caicedo's "partner in litigation," given that the bank has already obtained a judgment against Caicedo. With regard to the foreclosure dispute, the conflict between Banco Santander and Lennox is that between co-plaintiffs rather than between plaintiff and defendant.

The fact that Santander and Lennox are competing to have their mortgages be ranked first in priority is largely a practical problem, one which would disappear if the property were sold at a price high enough to satisfy the amounts owed under both mortgages. Indeed, a similar practical conflict occurs regularly, without requiring realignment, between joint and several defendants under a comparative negligence regime, where even though each individual defendant is liable in full to the plaintiff, any defendant paying the plaintiff in excess of its proportion of responsibility may seek contribution from the other co-defendants. In the case at hand, the principle remains the same but the roles are reversed: here we have two creditors seeking to collect from a debtor with limited resources.

The Court therefore concludes that if it were allowed to intervene, Banco Santander would be aligned as a plaintiff, albeit with a cross-claim against Lennox. Since pursuant to 28 U.S.C. § 1367(b) the Court cannot exercise supplemental jurisdiction over Banco Santander's claims, the Court denies the motion to intervene. Furthermore, given that the Court **denies** the motion to intervene, the motion to dismiss the intervenor's complaint is **denied** as moot.[14]

622 (citing the Fifth Circuit's decision in *Zurn Indus. Inc.*, 847 F.2d 234, as adopting the "collision of interests" test). The test adopted by the First Circuit, described in the text above, seems to be a variation on the "principal purpose" test.

14. The Court notes, however, that the motion would have been denied in any case. On one hand, the Court entertains serious doubts as to the validity of the intervenor's argument that the

unjust enrichment doctrine may be employed to correct errors in the Commonwealth's Registry of Property in the same way that the doctrine of equitable subrogation has been used in common law jurisdictions. Under Puerto Rico law, the only way to challenge the priority of an inscribed mortgage is to argue that the beneficiary under that mortgage was not a "tercero registral," that is, a third party who relied in good faith on the

### D. Failure to Join an Indispensable Party: Fed.R.Civ.P. 19(b)

■ Although no party has argued this point, the Court must determine whether Banco Santander is an indispensable party. As decided above, the Court lacks subject matter jurisdiction over Banco Santander's claims. However, if Santander is determined to be an indispensable party, the Court must then dismiss the entire action. *See, e.g., H.D. Corp. of Puerto Rico v. Ford Motor Co.*, 791 F.2d 987, 992 (1st Cir.1986). In making this determination, the Court does not write upon a blank slate. The First Circuit has written that:

> Rule 19(b), which governs indispensable parties, works in two steps. Step one requires the district court to decide whether a person fits the definition of those who should "be joined if feasible" under Rule 19(a). That is to say, is the person (what used to be called) a "necessary" party? ... If the person if a "necessary" party (i.e., fits the definition of 19(a)), but joinder is not feasible, the court must take step two. It must decide, using four "factors," whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed." That is to say, is the party "indispensable?"

*Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 134 (1st Cir.1989). *See also Estrada v. Sea–Land Service, Inc.*, 939 F.Supp. 129, 132–33 (D.P.R.1996); *E & E Investment Inc. v. Simmons Co.*, 169 F.R.D. 467, 469–72 (D.P.R.1996); *Potter v. Bennett*, 826 F.Supp. 62, 64–65 (D.R.I.1993).

Banco Santander qualifies as a Rule 19(a) "necessary" party, for much the same reasons that it qualified as a Rule 24(a) intervenor as of right. Rule 19(a) provides, in pertinent part, that:

> A person ... shall be joined as a party in the action if ... (2) the person claims an interest relating to the subject of the action and is so situated that the disposition

of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest. . . .

Fed.R.Civ.P. 19(a). As discussed above at Part II.A, Banco Santander's interest in the Cerro Gordo property will, as a practical matter, be impaired if the Court disposes of Lennox's complaint in Santander's absence.

However, Rule 19(a) contains a caveat—that joinder "not deprive the court of jurisdiction over the subject matter of the action"—which parallels the prohibition contained in 28 U.S.C. § 1367(b) on the exercise of supplemental jurisdiction over claims brought by persons seeking to join or intervene as plaintiffs when such exercise would be inconsistent with the requirements of diversity jurisdiction. As noted above, Banco Santander cannot be joined under Rule 19(a) because complete diversity would then be lacking, given that Santander would be aligned as a plaintiff.

■ The Court must therefore determine whether, under Rule 19(b), Banco Santander is an indispensable party, such that its absence from this case should lead the Court to dismiss the complaint. Rule 19(b) provides, in pertinent part, that:

> [T]he court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus being regarded as indispensable. The factors to be considered by the court include: *first*, to what extent a judgment rendered in the person's absence might be prejudicial to the person or to those already parties; *second*, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; *third*, whether a judgment rendered in the persons' absence will be adequate; *fourth*, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b) (emphasis added). "The factors are to a certain extent overlapping .

---

contents of the Registry of Property. On the other hand, that is the alternate argument wielded by Banco Santander, and it is enough to state a claim for relief. Of course, whether such an argument would survive a motion for summary

judgment is another matter altogether, and would depend on whether the intervenor could provide evidence that Lennox knew that Banco Santander's mortgage existed prior to its own.

and they are not intended to exclude other considerations which may be applicable in particular situations." Fed.R.Civ.P. 19 Advisory committee notes (1966).

The first factor weighs heavily in Banco Santander's favor. A judgment for Lennox in this case would necessarily require the Court to find that Lennox is a good-faith third party and therefore that the Registry of Property, whose records indicate that Lennox holds a first mortgage on the Cerro Gordo property, is accurate. A subsequent finding for Banco Santander would be precluded, perhaps by collateral estoppel or res judicata, but in any case certainly by the Registry itself. As a matter of Puerto Rico law, the Registry is run under the general principle that 'first in time is first in right.' The law establishes a presumption that the Registry is accurate, so that if Lennox came first, its mortgage would be ranked first, regardless of whether Banco Santander's mortgage deed was drawn up first. As discussed above at Part II.A, the only way to change the priority of mortgages is to directly challenge the presumption of accuracy by arguing that Lennox could not have relied in good faith on the Registry's accuracy because it had independent knowledge that the property was subject to the R.F. mortgage note. Fairness and efficiency require that both Lennox and Banco Santander be present in the same judicial proceeding in which this issue would be decided.

The second factor and third factors are related and point in the opposite direction, toward a finding that Banco Santander is not indispensable. Although there is no controversy as to Lennox's claims over four of the Caicedo properties, Banco Santander does challenge Lennox's rights to the Cerro Gordo property. Nevertheless, the Court could shape the relief so as to avoid the prejudicial effects of a judgment in this case that Banco Santander would otherwise suffer.

In particular, the Court could issue a judgment declaring that Caicedo is in breach of the mortgage agreement with Lennox, and therefore that Lennox is entitled to foreclose upon the mortgage securing the Cerro Gordo property. However, the Court would also stay the execution of the judgment, by holding in abeyance the judicial sale of the Cerro Gordo property, until the issue of priority was settled in a separate suit between Lennox and Banco Santander.

The fourth and final factor also points away from a finding that Banco Santander is indispensable. Undoubtedly, the courts of the Commonwealth of Puerto Rico are fully able to resolve the disputes among Lennox, Santander, and Caicedo regarding the Cerro Gordo property. Nevertheless, dismissing Lennox's cause of action would require the relitigation of the entire dispute in the Courts of the Commonwealth of Puerto Rico, more than three years after the federal complaint was first filed.

The Court concludes that Banco Santander is not an indispensable party because the Court can proceed to judgment in this case without unduly prejudicing its interests. However, in order to safeguard such interests, the Court will temporarily stay the execution of the judgment in this case as to the Cerro Gordo property. Banco Santander is encouraged to file a new, separate complaint for declaratory judgment in this district court on or before May 1, 1997,[15] and the parties are advised that the Court will favorably entertain a motion to consolidate such complaint with the instant case. However, failure to file a separate complaint by such date shall result in the lifting of the stay.

### III. Plaintiff's Motion for Judgment on the Pleadings Against Defendant

There appears to be no controversy of fact or law that Mr. Caicedo and CDI have

---

15. The U.S. District Court for the District of Puerto Rico would be able to entertain the declaratory judgment action if it were filed as a separate case. Pursuant to 28 U.S.C.A. § 2201(a) (1994), "(i]n a case of actual controversy *within its jurisdiction*, . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought." (emphasis added). Pursuant to 28 U.S.C.A. § 1332(c)(1) (1993), there is diversity of citizenship between Lennox and Banco Santander, since Banco Santander de Puerto Rico has its principal place of business in Puerto Rico, and Lennox is organized under the laws of, and has its principal place of business in, Texas.

breached their contractual.obligations to Lennox, as contained in the pledge agreement and mortgage notes. Indeed, the defendants have not even opposed the motion. The Court therefore grants the motion as follows.

First, the Court finds the defendants, Rodrigo Caicedo–Yusti and Caicedo Distributors, Inc., individually and severally liable to Lennox Industries, Inc. for the principal sum of $950,000.00, interest thereon from July 24, 1992, at the rate of 7% per year until full payment is made, and $95,000.00 in costs and attorneys' fees.

Second, the Court orders that the property subject to Deed No. 28, as well as the properties subject to Deed No. 29, *except for the Cerro Gordo property,* be sold at public auction in accordance with the Puerto Rico Mortgage Law of 1979, by a Special Master to be appointed by the Court. The proceeds of such sale are to be applied: first, to the expenses of the sale; second, to the payment of the plaintiff's costs, expenses, and attorneys' fees; third, to the interest due to the plaintiff; and fourth, to the principal amount due to the plaintiff. If any monies remain, they are to be deposited with the Clerk of the Court. If plaintiff be the highest bidder, plaintiff is to be allowed to bid with all or part of the money adjudged in its favor.

The judicial sale of the Cerro Gordo property, otherwise subject to the Deed No. 29 mortgage, however, is temporarily stayed until May 1, 1997. If Banco Santander does not file a new, separate complaint for declaratory judgment by such date, the stay shall be immediately lifted; if Santander does timely file such an action, the stay will not be lifted until such time as the mortgage priority dispute between Banco Santander and Lennox is resolved.

Third, the Court will enter a deficiency judgment against the defendants if the proceeds of the sale are insufficient to pay the amount adjudicated herein to the plaintiff.

## IV. Conclusion

Even though Banco Santander has met the requirements of Fed.R.Civ.P. 24(a)(2), its

motion to intervene as of right is denied, and Lennox's motion to dismiss the intervenor's complaint is denied as moot.[16] If allowed to intervene, Banco Santander would enter the litigation as a plaintiff. Under 28 U.S.C. § 1367(b), the Court cannot exercise jurisdiction over Banco Santander's claims because such exercise would be inconsistent with the jurisdictional requirements of 28 U.S.C. § 1332, in particular because there is no diversity of citizenship between Banco Santander de P.R. and the defendants. However, Banco Santander's interests would be in jeopardy if the Cerro Gordo property is sold at public auction before the mortgage priority dispute is resolved.

The Court therefore enters judgment for plaintiff on its contract claims against Caicedo, and also enters judgment of foreclosure for Lennox Industries and orders that a judicial sale be carried out forthwith of the property subject to the Deed No. 28 mortgage as well as some of the properties subject to the Deed No. 29 mortgage. However, the foreclosure and sale of the Cerro Gordo property is temporarily stayed.

IT IS SO ORDERED.

16. In view of the court's decision, the Defendant's Counsel's Motion for Leave to Withdraw as Counsel (Docket No. 19) is also denied as moot.