**ST. PAUL FIRE & MARINE
INSURANCE COMPANY**

v.

**CROKER, INC., et al.**

No. L–96–673.

United States District Court,
D. Maryland.

Sept. 29, 1998.

Roger E. Warin, and Harry Lee, of Washington, DC, for plaintiff.

Stephen J. Nolan, of Towson, Maryland, and Robert D. Kalinoski, and Eileen B. Riordan, of Baltimore, MD, for defendant Croker, Inc.

Lee H. Ogburn, and Karl Nelson, of Baltimore, MD, for defendant Royal Insurance Company of America.

Linda S. Woolf, and David H. Hollander, Jr., of Baltimore, MD, for defendant and third-party plaintiff Zurich–American Insurance Company.

Carl E. Tuerk, Jr., L. Robert Cooper, and Mary Rose Cook, of Baltimore, Maryland, and Stanley J. Levy, Jordan C. Fox, and Brian T. FitzPatrick, of New York, NY, for third-party defendant The Mayor and City Council of Baltimore.

## MEMORANDUM

LEGG, District Judge.

This case concerns a contractual agreement among three insurance companies: plaintiff St. Paul Fire & Marine Insurance Co. ("St. Paul"), defendant Royal Insurance Company of America ("Royal"), and an entity calling itself the "Zurich–American Insurance Group" ("Zurich"). In the agreement, the insurers contracted to split the costs of defending their mutual insured, Croker, Inc.,[1] in asbestos bodily-injury litigation. In filing this suit, St. Paul alleges that Royal has breached this agreement. As explained in this memorandum, this Court is unable to reach the merits of that claim due to the lack of complete diversity between the parties, a prerequisite for federal jurisdiction in this situation. Accordingly, this case must be dismissed.

### Background

In December 1990, St. Paul, Royal and Zurich entered into a cost sharing agreement (the "agreement") to resolve a dispute which existed among them with respect to defense responsibilities concerning asbestos bodily-injury claims against Croker. Each of the insurers had provided general liability coverage to Croker at various times over the previous 30 years. The three insurance companies agreed to share litigation expenses incurred after the date of the agreement according to a preset ratio.[2] The agreement contained no set term and was to continue until terminated by one of the parties in one of two circumstances. A participating company could, on 90 days notice, withdraw from the arrangement for any reason. The withdrawing insurer, however, would remain liable under the Agreement for "all Asbestos–Related Bodily Injury Claims filed prior to or during the term of the Agreement. . . ." (*See* Cost Sharing Agreement ¶ 1, Complaint Exh. 2 ). In the event that an insurer "withdraws from this Agreement upon exhaustion of the aggregate limits of its insurance policy or policies," its participation in and all liability under the agreement could be terminated immediately upon giving notice to the other two parties. (*Id.*)

In 1993, Croker entered a settlement agreement with third-party defendants[3] the

---

1. Croker is currently known as Belvedere Insulation, Inc., but has generally been referred to by the parties as "Croker," a practice which the Court will continue herein.

2. Royal agreed to pay 57% of Croker's defense costs, with St. Paul and Zurich each paying 21.5% of the total. (*See* Cost Sharing Agreement ¶ 3.)

3. As explained more fully below, Zurich filed a third-party Complaint against the City in an effort to join all parties involved in Royal's buyback of its underlying insurance policies with Croker. *See infra.*

Mayor and City Council of Baltimore (the "City") for property damage claims relating to Croker's installation of asbestos insulation in City buildings. Essentially, Croker, which had few, if any, assets, threw in the towel and consented to an entry of a $5 million judgment against it. (*See* St. Paul's Cross–Mot. Summ. J. Exh. 12, Settlement Agreement.) As part of the settlement agreement, Croker agreed to assign to the City:

> Any and all rights, claims, or causes of action Croker has or may have against any and all of Croker's insurers under or based upon the terms of any policy of insurance issued to Croker by any insurer, with respect to liabilities arising out of the claims set forth in the Complaint filed in the Circuit Court for Baltimore City, by the City, against Croker.... the claims assigned are intended to include all rights Croker ever had or may have, including claims for breach of contract, bad faith, fraud, return of premium and any other claims and damages.

(Settlement Agreement at ¶ 3).[4]

The City, in turn, entered an "Insurance Policy Buy Back Agreement" with Royal in August 1995. (*See* St. Paul's Cross–Mot. Summ. J. Exh. 10, Insurance Policy Buy Back Agreement). As part of this buy-back agreement, the City, as Croker's assignee, agreed to sell back to Royal all of the City's interests in Royal's policies with Croker in exchange for a payment of $110,000. (*See* Insurance Policy Buy Back Agreement at ¶ 2). In other words, Royal paid Baltimore

City $110,000, and, in exchange, the policy of insurance that Croker had purchased from Royal was marked canceled.[5]

Upon reaching this agreement, Royal, contending that this cancellation amounted to "exhaustion of its aggregate limits" under the agreement, declined to pay any defense costs incurred after the date of the buy back agreement. It gave its co-parties to the cost-sharing agreement notice of this withdrawal by letter on October 26, 1995.

On March 6, 1996, St. Paul filed the instant suit. The suit makes two broad claims. First, in counts I and II, St Paul seeks a declaratory judgment and contract damages against Royal for refusing to honor its commitments under the cost-sharing agreement. Second, in Counts III and IV, St. Paul seeks to hold Croker liable for engineering a collusive, bad-faith settlement. Among other relief, St. Paul seeks a declaration that the settlement is void and that, under the law covering the insurance industry, Royal's policy remains in effect, meaning that Royal remains obligated to meet its pro-rata cost of Croker's defense and liability exposure. St. Paul also seeks to hold Croker liable for Royal's share under the cost-sharing agreement and to impose a constructive trust on monies received by Croker from the buy-back agreements. The complaint names Zurich as a defendant, although St. Paul seeks no relief against it. Zurich apparently met all of its obligations under the cost-sharing agreement and was named as a defendant

---

**4.** Croker subsequently entered into a second assignment with the City as part of the City's buy-back with Royal, purporting to assign, essentially without qualification, "all of its interests in any policy of general liability insurance issued" by Royal. (See City's Mot. Summ. J. & Mot. to Abstain/Dismiss Exh. K).

**5.** The parties hotly dispute the significance of this buy-back agreement, as well as the interpretation of the settlement agreement between the City and Croker. Royal's liability appraisal for property damage under its policies with Croker totaled just $90,000; the City sought $110,000, which it measured as the $100,000 aggregate property damage limit from two $50,000 policies plus $10,000 in additional interest. (See, e.g.,

City's Mot. Summ. J. & Mot. Abstain/Dismiss at 16–17). However, those same policies provided at least $3.3 million in aggregate bodily injury coverage. The City's suit against Croker concerned property damage claims only. (See St. Paul's Cross–Mot. Summ. J. Exhs. 12 & 13). Even accepting Royal's account of this transfer, therefore, if Croker effectively assigned to the City the entirety of its Royal policies, including bodily injury coverage as well as property damage coverage, the buy-back agreement ostensibly results in Royal's paying $20,000 to the City of Baltimore to relieve itself of at least $3.3 million in bodily injury coverage for claims against Croker. As the following discussion explains, this Court need not determine the scope, validity, or effect of the buy-back agreement.

solely due to its status as a signatory to the agreement at issue.

Pending in this case are several potentially dispositive motions, including the City's Motion for Summary Judgment and Motion to Abstain/Dismiss.[6] Essentially, Baltimore City contends that this Court lacks jurisdiction because parties on opposite sides of the dispute (Zurich as a realigned plaintiff, Royal as defendant) are both citizens of Illinois. The Court agrees that jurisdiction is lacking. Accordingly, this Court shall, by separate Order, GRANT the City's Motion to Dismiss and DISMISS this case for lack of subject matter jurisdiction.[7]

### Subject Matter Jurisdiction

Because this case presents no federal question, federal jurisdiction exists only if there is complete diversity of citizenship. *See* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure ("Wright & Miller") § 3605 (2d ed.1984). The party asserting jurisdiction bears the burden of proving that complete diversity exists. *See* Wright & Miller § 3602.

■■■ As a first step in analyzing jurisdiction, the Court must align the parties according to their interests, determining which ones, by virtue of their interest in the litigation, should be considered plaintiffs and which ones defendants.[8] The City asks that the Court realign defendant/third party plaintiff Zurich Insurance Company ("Zurich") as a plaintiff; Zurich does not dispute this realignment. Indeed, the plaintiff in this case, St. Paul, has asserted no cause of action and has sought no relief from Zurich; Zurich has sought no relief from St. Paul; and Zu-

rich's only claim in this case is a Third Party Complaint directed against the City, a party concededly adverse to St. Paul's interests. The Court, therefore, agrees that Zurich is properly a plaintiff in this case. Following this realignment, the Court "must determine whether complete diversity continues to exist." *U.S. Fidelity & Guar. Co. v. A & S Mfg. Co., Inc.*, 48 F.3d 131, 133 (4th Cir. 1995).

It is undisputed that defendant Royal Insurance Company of America ("Royal") has citizenship for diversity purposes in Illinois.[9] The status of Croker and St. Paul as citizens of Maryland and Minnesota, respectively, is also clear. The City asserts that Zurich has its principle place of business in Schaumburg, Illinois, which, if true, would preclude complete diversity among the properly aligned parties. To decide this issue the Court must determine (i) what it is the actual corporate status of the "Zurich American Insurance Group" and (ii) the citizenship of that company or companies.

■■■ Zurich disputes the City's assertion, contending that the proper plaintiff is the Zurich Insurance Company ("ZIC"), a company incorporated under the laws of Switzerland and with its principal place of business worldwide in Zurich, Switzerland. If ZIC is the proper party, then complete diversity exists. Understanding why the Court declines to accept Zurich's argument requires a brief examination of the overall corporate structure of the Zurich Insurance Company.

According to ZIC, the original complaint improperly identifies the Zurich party as "Zurich–American Insurance Company." The "Zurich–American Insurance Company" as named in the Complaint and "Zurich–American Insurance Group" as named in the

---

6. St. Paul did not name Baltimore City as a defendant. The City was brought into the litigation as a third-party defendant by Zurich, apparently on the theory that the money paid by Royal to the City should actually go towards Royal's obligations under the cost-sharing agreement.

7. Plaintiff St. Paul originally filed this case in this Court; however, under Maryland Rule of Civil Procedure for Circuit Court 2–101(b), a Maryland Circuit Court will treat this action as timely filed if refiled in that court within thirty (30) days of this dismissal.

8. *See* Wright & Miller § 3605 ("Therefore, the federal court must determine the position of each party on the matters in dispute, and align the parties according to their true interests, at which point the relationship of the parties to one another determines whether diversity jurisdiction still may be maintained.").

9. For diversity purposes, a corporation is a "citizen" of both its place of incorporation and its principal place of business. *See* 28 U.S.C. § 1332(c)(1) (1994).

cost-sharing agreement are trade names and not corporate entities (see, e.g., Zurich's Opp. City's Mot. Summ. J. & Mot. Abstain/Dismiss Exh. 6, "Zurich–American Insurance Group," & Exh. 5, Dep. Mary Lou Hutson, at 26–28). ZIC explains its connection to this case in the following manner:

- that the Zurich Insurance Company is a foreign insurance company incorporated under the laws of Switzerland, with its principal place of business worldwide in Zurich, Switzerland, and its United States headquarters in Schaumburg, Illinois;

- that the Zurich Insurance Company wholly owns the Zurich Holding Company of America, which in turn wholly owns the American Guarantee & Liability Insurance Company ("American Guarantee"); and

- that American Guarantee issued insurance policies to Croker that gave rise in part to the cost-sharing agreement at issue in this case.

(See Zurich's Amended Answer.)[10] As the company at the top of this family tree, ZIC contends that it, as the ultimate parent of American Guarantee, should be deemed the real party in interest and the proper plaintiff in this case.

The Court disagrees that the citizenship of the ultimate parent, ZIC, is controlling. The entity that issued the insurance policies subject to the cost-sharing agreement was American Guarantee. It appears undisputed that American Guarantee is a New York corporation with its principal place of business in Illinois.[11] ZIC has offered no explanation why the actual insurer, rather than the remote parent, is not the real party in interest.[12] ZIC did not issue the policy to Croker, rather it is merely the parent company that owns American Guarantee. As such, the subsidiary company is the proper party in this suit. See Travelers Indemnity Co. v. Household International, Inc., 775 F.Supp. 518, 525 (D.Conn.1991) (dismissing action for lack of jurisdiction after finding that policy was issued by a non-diverse Traveler's subsidiary, rather than the parent company).

As stated, the cost sharing agreement was signed by "Zurich–American Insurance Group," which is a trade name and not a corporate entity. Zurich's own proffered explanation of its corporate structure identifies no less than four separate corporate entities operating in the United States authorized to use that name.[13] Given the admission by

10. This simple chain of ownership belies a much more complex organization. Zurich's corporate structure also includes a company called, "Zurich [no dash] American Insurance Company *of Illinois*," incorporated, having its principal place of business in Illinois. See Zurich's Opp. City's Mot. Summ. J. & Mot. Abstain/Dismiss Exh. 6, "Zurich–American Insurance Group"; see also *Bourque v. Nan Ya Plastics Corp.*, 906 F.Supp. 348, 351 (M.D.La.1995) (after defendant "Zurich–American Insurance Company" had removed to federal court alleging diversity jurisdiction, the court observed that "Zurich–American Insurance Company is an insurance company domiciled in the state of Illinois with its principal place of business in Schaumberg [sic], Illinois").

11. See Zurich's Opp. City's Mot. Summ. J. & Mot. Abstain/Dismiss Exh. 6, "Zurich–American Insurance Group" ("American Guarantee and Liability Insurance Co., incorporated under the laws of the State of New York, 1939"); see also *Zurich Ins. Co. v. American Ins. Co.*, No. 87 C 2286, 1988 WL 112214 (N.D.Ill. Oct.14, 1988) ("Zurich is a Swiss corporation with its principal place of business in Switzerland. American Guarantee is a New York corporation with its principal place of business in Illinois. Together, Zurich and American Guarantee underwrite insurance in the United States as the Zurich–Amer-

ican Insurance Companies ("Zurich–American"). Zurich–American is based in Schaumburg, Illinois."); Wright & Miller § 3602 (Supp.1998) ("When jurisdiction is challenged on a factual basis, the court is free to look at evidence outside the pleadings, including affidavits, depositions, testimony, documents, and other available extra-pleading material, or to conduct a limited evidentiary hearing, in determining whether it has jurisdiction.") (footnotes omitted).

12. A central issue raised in the complaint is the extent to which, at common law, an insurer enjoys rights of contribution against other insurers issuing policies to a mutual insured and covering a common risk. Thus, the real party in interest would be the company issuing the insurance policy.

13. See Zurich's Opp. City's Mot. Summ. J. & Mot. Abstain/Dismiss Exh. 6, "Zurich–American Insurance Group" (identifying, in addition to American Guarantee, "Zurich Insurance Co., U.S. Branch," a Swiss corporation; "Zurich American Insurance Company of Illinois," an Illinois corporation; and "American Zurich Insurance Company," an Illinois corporation). Of these four entities, three are citizens of Illinois for diversity purposes.

Zurich that American Guarantee was the actual party to the insurance contract, this Court declines to allow ZIC to resolve the ambiguity caused by its use of the trade name in its favor.

Moreover, the City draws this Court's attention to reported cases in other courts in which the Zurich Insurance Company has represented that its principal place of business was located in Illinois, or even that its state of incorporation was Illinois. *See Zurich Ins. Co. v. Uptowner Inns, Inc.*, 740 F.Supp. 404, 405 (S.D.W.Va.1990) (plaintiff Zurich Insurance Company had filed declaratory judgment action in federal court, alleging that it was a Swiss corporation with its principal place of business in the State of Illinois), *aff'd*, 904 F.2d 702, 1990 WL 76505 (4th Cir.1990); *see also Zurich Ins. Co. v. Nissan Motor Corp.*, Civ. A. No. 96–529, 1996 WESTLAW 277604 at *1–*2 (E.D.La. May 23, 1996) (plaintiff Zurich Insurance Company had filed in Louisiana state court, alleging Illinois incorporation and principal place of business).[14]

■ Because the Zurich Insurance Company has apparently represented to other courts that the state of its principal place of business, or even its state of incorporation,

was Illinois, the City asks this Court to find that Zurich is judicially estopped from claiming that its principal place of business is elsewhere. The "principal place of business" of a corporation is at best a mixed determination of fact and law, however, making judicial estoppel inappropriate. *See Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir.1996) ("[T]he position sought to be estopped must be one of fact rather than law or legal theory."). Nevertheless, these prior representations, coupled with the confusion inherent in Zurich's corporate tree, have a material bearing on the decision regarding the proper party in this case.

As stated, Zurich, as a party asserting diversity jurisdiction, bears the burden of proving that ZIC is the real party in interest. Zurich has failed to meet this burden.[15] Zurich fails to explain why American Guarantee, the Zurich entity that issued the underlying insurance policies to Croker, and which maintains its principal place of business in Illinois, is not a necessary party plaintiff to this case. It also fails to explain which Zurich entity, if not American Guarantee, entered into the cost-sharing agreement—nor why any other Zurich entity would do so, given that American Guarantee had the re-

---

14. *See also Zurich Ins. Co. v. Principal Mut. Life Ins. Co.*, No. 92 C 2266, 1992 WL 309547 at *4 n. 1 (N.D.Ill. Oct.20, 1992) (plaintiff Zurich Insurance Company filed declaratory judgment action in federal court alleging Illinois incorporation and principal place of business); *Zurich Ins. Co. v. Celotex Corp.*, No. 88 C 5863, 1988 WL 107392 at *1 & *6 n. 2 (N.D.Ill. Oct.11, 1988) (plaintiff Zurich Insurance Company had filed declaratory judgment action in Illinois state court, alleging Swiss incorporation and principal place of business in Illinois); *Zurich Ins. Co. v. Raymark Indus., Inc.*, 672 F.Supp. 1102, 1103 (N.D.Ill. 1987) (plaintiff Zurich Insurance Company had filed in Illinois state court alleging it was an Illinois corporation with its principal place of business in Schaumburg, Illinois); *Barr v. Zurich Ins. Co.*, 985 F.Supp. 701, 702 (S.D.Tex.1997) (granting remand adverse to Zurich, court observes that defendant Zurich Insurance Company is "a foreign corporation with its principal place of business in Illinois"); *Bradley Corp. v. Zurich Ins. Co.*, 984 F.Supp. 1193, 1195 (E.D.Wis.1997) (diversity case in which plaintiff alleged defendant Zurich Insurance Company incorporated and had its principal place of business in Illinois). *But see OMI Holdings, Inc. v. Chubb Ins.*

*Co.*, No. CIV. A. 95–2519–KHV, 1996 WL 772585 at *1 (D.Kan. Nov.22, 1996) (defendant Zurich Insurance Company moved for *forum non conveniens*, alleging Swiss incorporation and principal place of business); *Zurich Ins. Co. v. Ennia General Insurance Co.*, 882 F.Supp. 1438, 1439 (S.D.N.Y.1995) (in case under federal question jurisdiction, petitioner Zurich Insurance Company, U.S. Branch, had represented that it had Swiss incorporation and principal place of business); *National Realty & Inv. Co. v. Zurich Ins. Co.*, No. 86 C 2977, 1987 WL 18912 at *5 n. 2 (N.D.Ill. Oct.15, 1987) (defendant Zurich Insurance Company removed to federal court, alleging Swiss incorporation and principal place of business).

15. Zurich and the City go to great lengths debating the applicability of different judicial doctrines and tests for determining a corporation's "principal place of business" for diversity citizenship purposes. As this discussion explains, however, this debate obscures Zurich's failure to explain which of the many corporations related to the "Zurich American Insurance Group" this Court should look to for diversity purposes.

sponsibilities, if any, under the Croker insurance policies.[16]

Moreover, it is not unfair to treat Zurich as an Illinois citizen. The United States headquarters of ZIC is in Schaumburg, Illinois. At least three of ZIC's subsidiaries authorized to use the trade name at issue in this case are Illinois corporations. Most importantly, American Guarantee, a legitimate corporate entity that was a party to the insurance contracts that underlie this litigation, is an Illinois citizen. When signing the cost-sharing agreement under the trade name "Zurich–American Insurance Group," it appears to this Court that Zurich's agent must have acted on behalf of the Zurich corporate entity that had issued policies to Croker, namely American Guarantee. As such, this Court determines that American Guarantee is the proper plaintiff in this lawsuit and that it is a citizen for diversity purposes of both New York and Illinois.

*Conclusion*

Under the proper realignment, corporate entities with Illinois citizenship—Royal and Zurich/American Guarantee—appear on both sides of this dispute. As a result, complete diversity does not exist, and this Court lacks subject matter jurisdiction. Accordingly, this Court shall, by separate Order, DISMISS this case.

---

**16.** Relatedly, Zurich fails to explain for which Zurich entity does or did William R. Zeller, the Zurich signatory to the cost-sharing agreement, serve as "Assistant Vice President Manager–Environmental Claims"; how that entity acquired potential responsibility for the Croker policies; the location of that entity's major service activities; the location of that entity's corporate headquarters; and the location of that entity's daily operating and management activities.